UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JENNIFER AGINS-MCCLAREN,                    :

              Plaintiff,                    :        14 Civ. 8648 (AJP)

        -against-                                :        **OPINION AND ORDER**

CAROLYN W. COLVIN, Commissioner of          :
Social Security,
                                              :
        Defendant.
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Jennifer Agins-McClaren, represented by counsel, brings this action on behalf of her minor child, C.E.M., pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security ("the Commissioner") to deny C.E.M. Supplemental Security Income ("SSI") benefits.  (Dkt. No. 1: Compl.)  The parties have cross-moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 17: Gov't Notice of Motion; Dkt. No. 19: Agins-McClaren Notice of Cross-Motion.)  The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 13.)

        For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is DENIED and Agins-McClaren's motion for judgment on the pleadings is GRANTED to the extent of remanding the case to the Commissioner.

# FACTS

## Procedural Background

On December 29, 2011, plaintiff Jennifer Agins-McClaren filed an application for SSI benefits on behalf of her then thirteen year old daughter C.E.M. based upon a claim of bipolar disorder and Crohn's disease. (Dkt. No. 16: Administrative Record ("R.") 176-84.) The application was denied on April 12, 2012. (R. 79-86.) At Agins-McClaren's request, an administrative law judge ("ALJ") held a hearing on March 14, 2013. (R. 39-75.) Agins-McClaren and C.E.M. appeared and testified at the hearing and were represented by counsel. (Id.) On April 11, 2013, ALJ Gitel Reich issued a written decision finding that C.E.M. was not disabled. (R. 14-34.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on September 9, 2013. (R. 1-3.)

## Non-Medical Evidence

Plaintiff C.E.M. was between the ages of thirteen and fourteen during the period at issue, at which time she attended the Smith School in Manhattan. (R. 208, 250-93.) At the March 14, 2013 hearing, Agins-McClaren testified that while she sometimes has to prompt her daughter, C.E.M. is able to study, complete homework, and care for her own personal hygiene. (R. 32-37, 204-05.) Agins-McClaren stated that C.E.M. spends an unusual amount of time obsessing over things, particularly school-related, and that this obsessive behavior has caused her to stop communicating with her peers. (R. 46-49.) Agins-McClaren testified that C.E.M. often has difficulty falling asleep and will tell her mother that her mind is too active to fall asleep. (R. 55.)

Agins-McClaren testified that her daughter has seasonal depression and in the winter, sleeps between ten and twenty hours per day. (R. 57.) C.E.M. has missed over twenty school days in one semester and is late to school four or five days per week, sometimes refusing to even get out

of bed to eat or to socialize.  (R. 55, 57, 60-61, 66-69.)  On average, C.E.M. refuses to go to school seven or eight days a month.  (R. 58, 61.)  Agins-McClaren testified that C.E.M. was helped by the psychiatric treatment she received from Dr. Gregory Lombardo, her psychiatrist.  (R. 54-55, 62.)

C.E.M.'s school report card shows that she had twenty-five absences from October 2011 to June 2012.  (R. 281-87.)  During her eighth grade year, 2011-12, an individualized education program ("IEP") was formulated to provide accommodations for her Crohn's disease.  (R. 218-31.)  The IEP noted that C.E.M. had good relationships with her peers but experienced anxiety attacks that cause her to "shut down."  (R. 219.)

Amy Guzzi, a learning specialist at C.E.M.'s school, completed a questionnaire indicating that C.E.M. had an unusual degree of absenteeism and often arrived at school late.  (R. 242, 248.)  Ms. Guzzi reported that C.E.M. had an above-average written language level, but had a problem expressing ideas in written form and completing tasks for homework assignments.  (R. 242-44.)  She reported that C.E.M. "shuts down" when "frustrated" and that her obsessive compulsive disorder interfered with her school work.  (R. 247-48.)  Ms. Guzzi assessed C.E.M.'s abilities in the six domains used by the SSA to assess a child's disability.  (R. 243-48.)  Ms. Guzzi opined that C.E.M. had no limitation in the domains of acquiring and using information, interacting and relating with others, and moving about and manipulating objects.  (R. 243, 245-46.)  In the domain of attending and completing tasks, Ms. Guzzi noted that C.E.M. "has a hard time handing in assignments and completing homework."  (R. 244.)  In the domain of caring for herself, Ms. Guzzi wrote that C.E.M. "shuts down when she becomes frustrated."  (R. 247.)  Lastly, in the domain of health and physical well-being, Ms. Guzzi noted that C.E.M. "suffers from obsessive compulsive disorder, which sometimes interferes with her schoolwork.  She has a tendency to come to school late and is not consistent with completing schoolwork."  (R. 248.)

**Medical Evidence**

    **Treating Physicians**

        **Dr. Gregory Lombardo**

C.E.M. had been seeing Dr. Lombardo, a psychiatrist, since November 14, 2011. (R. 328-31.) On February 27, 2013, Dr. Lombardo submitted a report concluding that C.E.M. suffers from a form of "juvenile onset Bipolar Disorder" with symptoms of anxiety, hypomania and seasonal depression together with related sleep disturbances and obsessional thinking. (R. 328.) Dr. Lombardo reported that during his treatment, C.E.M. suffered two severe episodes of depression, each lasting more than a month, resulting in an inability to function at home or at school. (Id.) Dr. Lombardo prescribed C.E.M. a mood stabilizer (Lamictal), an adjunctive mood stabilizer (Lithium), two minor tranquilizers (Clonazepam and Alprazolam), and an antidepressant (Emsam). (Id.) Dr. Lombardo stated that during his treatment of C.E.M, "[a]t times she was so disabled she could not come to [his] office for treatment and it was necessary to work with her in her home." (R. 328.)

Dr. Lombardo completed a questionnaire on C.E.M.'s ability to function in the six domains evaluated by the SSA and found marked limitations in four domains. (R. 330.) Dr. Lombardo concluded that C.E.M. has a marked limitation in the domain of acquiring and using information because her anxiety periodically limited her ability to read, study and participate in athletic training. (R. 328, 330.) He assessed a marked limitation in the domain of attending and completing tasks based on C.E.M.'s refusal to attend school and athletic practice. (R. 329, 330.) Dr. Lombardo assessed a marked limitation in the domain of caring for oneself, observing that when C.E.M. was unwell, she would "carry on minimal activities of daily living without assistance but [did] not take initiative in feeding herself [and] observing appropriate hours of sleep." (R. 329.) Dr. Lomardo assessed a marked limitation in the domain of health and physical well-being and stated

5

that C.E.M.'s anxiety "has the potential to seriously complicate [C.E.M's] medical condition." (R. 329.)

Dr. Lombardo assessed a moderate limitation in the domain of interacting and relating with others, stating that "when she is well [C.E.M.] can be engaging and charismatic. When she is not well she will become withdrawn, refusing to speak, avoiding social contact, and reacting with intense irritability when approached." (R. 329-30.) Lastly, he found no limitation in the domain of moving about and manipulating objects. (R. 330.)

### Dr. Amy DeFelice

Between August 2011 and December 2012, C.E.M. saw Dr. DeFelice, a pediatric gastroenterologist. (R. 343-56.) On August 9, 2011, Dr. DeFelice diagnosed C.E.M. with Crohn's disease and C.E.M. complained of muscle aches and back pain. (R. 343.) On September 22, 2011, Dr. DeFelice again noted C.E.M. as having muscle pain, although no sign of arthritis. (R. 348.) She also observed that C.E.M. has a poor sleep pattern, poor school attendance with chronic fatigue, panic disorder and depression. (Id.) By August 15, 2012, C.E.M. was no longer complaining of muscle pain, and she had gained eighteen pounds since August 2011. (R. 351-52.) On December 14, 2012, Dr. DeFelice concluded that C.E.M.'s Crohn's disease was asymptomatic and noted that she was not taking any medication for it. (R. 354-56.) He also found that her "[m]ajor problem is depression," and her active problems included bipolar disorder, hypermobility syndrome and panic disorder. (R. 354.)

### Dr. Amy Starr

In September 2011, C.E.M. saw Dr. Starr, a rheumatologist. (R. 346-49.) Dr. Starr noted five tender fibromyalgia points, but her findings were otherwise unremarkable. (R. 346.) Dr. Starr wrote a note for C.E.M.'s school recommending that she be given two sets of books, modified

physical education, placement of classrooms and lockers close together, non-demanding classes early in the morning, and extra time to get to class. (R. 332, 350.)

**Consultative Physicians**

**Dr. Andre Gray**

On March 1, 2012, Dr. Gray, a pediatrician, examined C.E.M. (R. 308-13.) Dr. Gray diagnosed her with bipolar, anxiety disorder, panic disorder and obsessive behavior, and opined that her prognosis for these conditions was guarded. (R. 312.) Dr. Gray noted that C.E.M. had Crohn's disease in remission, which did not inhibit her social activity. (R. 308, 312.) He noted that while C.E.M. has anxiety about school assignments and exams, this anxiety did not distract too much from her recreational and social activities. (R. 308, 310.) Dr. Gray stated that when C.E.M does have a panic attack, she suffers from very marked limitations. (R. 312-13.)

**Dr. Christopher Flach**

On March 1, 2012, C.E.M. was evaluated by consultative psychologist Dr. Flach. (R. 314-18.) Dr. Flach diagnosed her with a learning disorder, bipolar disorder and panic disorder, and ruled out obsessive compulsive disorder. (R. 317.) He opined that these disorders "seem to mildly to moderately interfere with [C.E.M.'s] ability to function on a daily basis," but that her "prognosis seems good." (Id.) Dr. Flach stated that at times, C.E.M. had difficulty adequately maintaining appropriate social behavior and interacting with peers and adults. (Id.) He noted that C.E.M. dressed and bathed herself, ate independently, traveled independently and helped with chores. (R. 316-17.)

**Dr. L. Meade**

On March 27, 2012, Dr. Meade, a state agency psychiatrist, reviewed the evidence of record and assessed C.E.M.'s condition. (R. 319-24.) Dr. Meade concluded that C.E.M. had a

learning disorder, bipolar disorder, panic disorder, and ruled out obsessive compulsive disorder. (R. 319.) Dr. Meade opined that these disorders were severe but did not meet, medically equal or functionally equal the requirements of a listed impairment. (Id.) Dr. Meade found C.E.M.'s limitations to be less than marked in all six areas. (R. 321-23.)

### Dr. Allan Rothenberg

Dr. Rothenberg, a board certified pediatrician, testified as a medical expert at the hearing before ALJ Reich that C.E.M. has Crohn's disease and bipolar disorder, and opined that none of her conditions met or functionally equaled the requirements of a listed impairment. (R. 63, 72.) Dr. Rothenberg concluded that C.E.M. has a marked limitation in the domain of caring for herself, but no other marked or extreme limitations. (R. 63-64.)

### The ALJ's Decision

On April 11, 2013 ALJ Reich issued a written decision denying Agins-McClaren's application for SSI benefits for C.E.M. (R. 14-34.)

ALJ Reich performed the three step test for determining disability (R. 19-20) as follows: At the first step, ALJ Reich found that C.E.M. was not gainfully employed at any time relevant to the decision. (R. 21.) At the second step, ALJ Reich found that C.E.M's diagnosis of Crohn's disease and bipolar disorder constituted severe impairments. (R. 21-24.) At the third step, ALJ Reich found that neither C.E.M.'s Crohn's disease nor bipolar disorder "meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and that C.E.M. "does not have an impairment or combination of impairments that functionally equals the severity of the listings." (R. 25.)

In analyzing whether C.E.M.'s impairments functionally equaled the severity of the listings, ALJ Reich followed a two-step process. First, ALJ Reich determined whether there is a

medically determinable physical or mental impairment, and then evaluated the intensity, persistence, and limiting effects of C.E.M.'s symptoms to determine the extent to which they limit her functioning. (R. 25-26.) At the second step, the ALJ evaluated the six domains pursuant to 20 C.F.R. § 416.926a to determine whether C.E.M. has no limitation, a marked limitation, or a severe limitation in each domain. (Id.)

ALJ Reich noted which medical evidence she relied on and how much weight she attributed to that evidence in determining C.E.M.'s functioning in these six domains. (R. 25-34.) Additionally, the ALJ must make a finding on the claimant's credibility when statements regarding intensity, persistence, or limiting effects of symptoms are not substantiated by objective medical evidence. (R. 26.)

ALJ Reich gave "significant weight" to Dr. Rothenberg, a consultative pediatrician, because his testimony was "consistent with [C.E.M.'s] longitudinal record of medical care, he is a specialist and he was present at the hearing." (R. 28.) The ALJ also accepted the opinion of Dr. Flach, a consultative physician, finding it consistent with the evidence of record. (R. 27.)

ALJ Reich gave only "some weight" to the opinion of C.E.M.'s treating physician Dr. Lombardo because "his assessment is overstated in light of the balance of the evidence." (R. 27.) The ALJ gave "little weight" to the opinion of consultative pediatrician Dr. Gray because he is not specialized in the field of psychiatry. (R. 27.)

Regarding C.E.M.'s credibility, ALJ Reich concluded that C.E.M. "has some subjective limitations, but not of the intensity, frequency, or duration alleged" and that the "limitations appeared exaggerated compared to the objective medical evidence of record; and are inconsistent with the much higher level of daily activities indicated." (R. 26.)

ALJ Reich concluded that C.E.M. has a "marked limitation" in the domain of caring

for herself, based on the testimony of Dr. Rothenberg. (R. 32-33.) ALJ Reich concluded that C.E.M. has no limitation in two domains, moving about and manipulating objects, and acquiring information, also based on the testimony of Dr. Rothenberg. (R. 25-29, 31-32.) The ALJ found that C.E.M. has a "less than marked limitation" in three domains: attending and completing tasks, interacting and relating with others, and health and physical well-being. (R. 29-31, 33-34.)

Because ALJ Reich concluded that C.E.M. only has a marked limitation in one domain and no extreme limitations, she entered a finding of not disabled. (R. 34.)

## ANALYSIS

**I.    THE APPLICABLE LAW**

    **A.    Standard of Review**

A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record as a whole to support such determination. E.g., 42 U.S.C. § 405(g); Giunta v. Comm'r of Soc. Sec., 440 F. App'x 53, 53 (2d Cir. 2011).[1] "'Thus, the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision.'" Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y.

---

[1]    See also, e.g., Prince v. Astrue, 514 F. App'x 18, 19 (2d Cir. 2013); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 551 U.S. 1132, 127 S. Ct. 2981 (2007); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 61 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983).

July 26, 2002) (Peck, M.J.).[2]

The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[3] "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983). The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[4]

The Court, however, will not defer to the Commissioner's determination if it is "'the product of legal error.'" E.g., Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y. Mar. 29, 2000) (Peck, M.J.); see also, e.g., Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012); Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Tejada v. Apfel, 167 F.3d at 773 (citing cases).

---

[2]  See also, e.g., Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) (Chin, D.J.) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." (quotations & alterations omitted)).

[3]  See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

[4]  See also, e.g., Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012); Veino v. Barnhart, 312 F.3d at 586.

B.      **The Applicable Legal Standard for Determining Disability of a Child**

Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "PRWORA"), Pub. L. No. 104-193, 1996 U.S. Code Cong. & Admin. News (110 Stat.) 2105, a disability exists for purposes of SSI benefits if a child under the age of eighteen:

> [1] has a medically determinable physical or mental impairment, [2] which results in marked and severe functional limitations, and [3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . [however,] no individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C)(i)-(ii); see, e.g., Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 486-87 (2d Cir. 2012); Encarnacion ex rel. George v. Astrue, 568 F.3d 72, 75 (2d Cir. 2009), cert. denied, 559 U.S. 1057, 130 S. Ct. 2342 (2010); Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004); Encarnacion v. Barnhart, 331 F.3d 78, 84 (2d Cir. 2003); Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Quinones v. Chater, 117 F.3d 29, 33 n.1 (2d Cir. 1997).

The implementing regulations provide a three-step process for determining eligibility. 20 C.F.R. § 416.924(a).[5] In the first step, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If so, there can be no finding of disability. 20 C.F.R. § 416.924(a)-(b).[6] If not, the analysis proceeds to step two, which requires the ALJ to determine whether the child has a medically determinable, severe impairment or combination of

---

[5]  See, e.g., Encarnacion ex rel. George v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 189; Encarnacion v. Barnhart, 331 F.3d at 84; Morgan v. Barnhart, 04 Civ. 6024, 2005 WL 925594 at *9 (S.D.N.Y. Apr. 21, 2005) (Peck, M.J.) (& cases cited therein).

[6]  See also, e.g., Encarnacion ex rel. George v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 189; Encarnacion v. Barnhart, 331 F.3d at 84.

impairments. 20 C.F.R. § 416.924(c).[7] If the impairment(s) constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the child will not be found to have a severe impairment. 20 C.F.R. § 416.924(c); see also, e.g., Encarnacion ex rel. George v. Astrue, 568 F.3d at 75; Lebron v. Colvin, 13 Civ. 9140, 2015 WL 1223868 at *10 (S.D.N.Y. Mar. 16, 2015). If there is a finding of severe impairment, however, the analysis proceeds to step three, which requires the ALJ to determine whether the impairment(s)

> meet, medically equal, or functionally equal the listings. An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings [of Impairments in appendix 1 of subpart P of part 404 of this chapter], or if it functionally equals the listings.

20 C.F.R. § 416.924(d).[8] If this equivalency test is satisfied, and the statute's durational requirement is satisfied as well, then the child will be found to be disabled. 20 C.F.R. § 416.924(d)(1). Otherwise, he will not. 20 C.F.R. § 416.924(d)(2).

To "functionally equal the listings," an impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).[9] A "marked limitation" is one where the "impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i); see also, e.g., Encarnacion ex rel. George v. Astrue, 568 F.3d at 75; Pollard v.

---

[7] See, e.g., Encarnacion ex rel. George v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 189; Encarnacion v. Barnhart, 331 F.3d at 84.

[8] See also, e.g., Encarnacion ex rel. George v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 189; Encarnacion v. Barnhart, 331 F.3d at 84. "SSA amended its regulations again, effective January 2, 2001, to essentially eliminate medical equivalence proceedings and to analyze all children under a functional equivalence rubric." Encarnacion v. Barnhart, 331 F.3d at 84 n.3.

[9] See also, e.g., Encarnacion ex rel. George v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 190; Encarnacion v. Barnhart, 331 F.3d at 84-85.

Halter, 377 F.3d at 190; Lebron v. Colvin, 2015 WL 1223868 at *10.  An "extreme" limitation is one where the "impairment(s) interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i); see also, e.g., Encarnacion ex rel. George v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 190; Lebron v. Colvin, 2015 WL 1223868 at *10.

The six functional domains are:  "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well being."  20 C.F.R. § 416.926a(b)(1); see also id. § 416.926a(g)-(l); Encarnacion ex rel. George v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 190; Encarnacion v. Barnhart, 331 F.3d at 84 & n.4; Lebron v. Colvin, 2015 WL 1223868 at *10.

### C. The Treating Physician Rule

The "treating physician's rule" is a series of regulations set forth by the Commissioner in 20 C.F.R. §§ 404.1527 and 416.927 detailing the weight to be accorded a treating physician's opinion. Specifically, the Commissioner's regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); see, e.g., Rugless v. Comm'r of Soc. Sec., 548 F. App'x 698, 699-700 (2d Cir. 2013); Meadors v. Astrue, 370 F. App'x 179, 182 (2d Cir. 2010); Colling v. Barnhart, 254 F. App'x 87, 89 (2d Cir. 2007); Lamorey v. Barnhart, 158 F. App'x 361, 362 (2d Cir. 2006); Lebron v. Colvin, 13 Civ. 9140, 2015 WL 1223868 at *10 (S.D.N.Y. Mar. 16, 2015).

Further, the regulations specify that when controlling weight is not given a treating physician's opinion (because it is not "well-supported" by other medical evidence), the ALJ must consider the following factors in determining the weight to be given such an opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant. 20 C.F.R. § 404.1527(c)(2)-(6); see, e.g., Cichocki v. Astrue, 534 F. App'x 71, 74 (2d Cir. 2013); Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 197 (2d Cir. 2010).[10]

When a treating physician provides a favorable report, the claimant "is entitled to an express recognition from the [ALJ or] Appeals Council of the existence of [the treating physician's] favorable . . . report and, if the [ALJ or] Council does not credit the findings of that report, to an explanation of why it does not." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999); see, e.g., Cichocki v. Astrue, 534 F. App'x at 75; Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (ALJ's failure to consider favorable treating physician evidence ordinarily requires remand pursuant to Snell but does not require remand where the report was "essentially duplicative of evidence considered by the ALJ"); Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence."

---

[10]/ See also, e.g., Foxman v. Barnhart, 157 F. App'x 344, 346-47 (2d Cir. 2005); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); Lebron v. Colvin, 2015 WL 1223868 at *10.

(citations omitted)); Lebron v. Colvin, 2015 WL 1223868 at *17, *19; Ramos v. Barnhart, 02 Civ. 3127, 2003 WL 21032012 at *7, *9 (S.D.N.Y. May 6, 2003) (The ALJ's "'failure to mention such [treating physician report] evidence and set forth the reasons for his conclusions with sufficient specificity hinders [this Court's] ability . . . to decide whether his determination is supported by substantial evidence.'").

The Commissioner's "treating physician" regulations were approved by the Second Circuit in Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).

## II. APPLICATION OF THE LEGAL STANDARD TO C.E.M.'S CLAIM

ALJ Reich erred by failing to provide adequate reasons for discounting the opinion of Dr. Lombardo, C.E.M.'s treating psychiatrist. The ALJ stated that Dr. Lombardo's opinion was given only "some weight" as "his assessment is overstated in light of the balance of the evidence." (See page 8 above.) However, ALJ Reich did not identify what evidence was inconsistent with Dr. Lombardo's testimony.

The applicable regulations state that the SSA "will always give good reasons in [the] notice of determination or decision for the weight [the SSA] give[s] [the] treating source's opinion." 20 C.F.R. 404.1527(c)(2); see also, e.g., Duran v. Colvin, 14 Civ. 4681, 2015 WL 4476165 at *8 (S.D.N.Y. July 22, 2015) (Peck, M.J.) (quoting Snell v. Apfel, 177 F.3d 177 F.3d 128, 134 (2d Cir. 1999) (the claimant "is entitled to an express recognition from the [ALJ or] Appeals Council of the existence of [the treating physician's] favorable . . . report and, if the [ALJ or] Council does not credit the findings of that report, to an explanation of why it does not.")). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even-and perhaps especially-when those dispositions are unfavorable. A claimant . . . who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative

16

bureaucracy that she is not, unless some reason for the agency's decision is supplied." Snell v. Apfel, 177 F.3d at 133.

Conclusory statements such as the treating physician's opinion being "'not supported by the preponderance of the objective evidence of record'" and "'not consistent with the evidence on record'" are insufficient reasons for assigning less weight to the opinion of treating physicians. Miller v. Comm'r of Soc. Sec., 13 Civ. 6233, 2015 WL 337488 at *22 (S.D.N.Y. Jan. 26, 2015) (quoting Duncan v. Astrue, No. 09-CV-4462, 2011 WL 1748549 at *18 (E.D.N.Y. May 6, 2011)). The "requisite 'good reasons' must be articulated and 'post hoc rationalizations for agency action' are not acceptable." Sickler v. Colvin, 14 Civ. 1411, 2015 WL 1600320 at *12 (S.D.N.Y. Apr. 9, 2015) (quoting Newbury v. Astrue, 321 F. App'x 16, 18 (2d Cir. 2009)).

Generic references to the record as a whole are not sufficient. See, e.g., Rugless v. Comm'r of Soc. Sec., 548 F. App'x 698, 700 (2d Cir. 2013) (remanding to the SSA because the ALJ's statement that the treating physician's opinion "'is inconsistent with the record and not supported by any facts or findings'" is conclusory and not sufficient to set forth the reasons for the weight assigned to the treating physician's opinion); Sickler v. Colvin, 2015 WL 1600320 at *12 (remanding because the ALJ's statement that a treating physician's opinion is inconsistent with the medical records on file does not sufficiently set forth the ALJ's reasons for the weight assigned to the treating physician's opinion); Miller v. Comm'r of Soc. Sec., 2015 WL 337488 at *22 (remanding because the ALJ's statement that the treating physician's opinion was "inconsistent with the 'extensive activities of daily living that the claimant was able to perform'" was insufficient); Intonato v. Colvin, 13 Civ. 3426, 2014 WL 3893288 at *14-15 (S.D.N.Y. Aug. 7, 2014) (remanding because the ALJ's statement that the treating physician's opinions were "'inconsistent with the examination findings as noted by [the consultative physician]'" was insufficient); Garner v. Colvin,

13 Civ. 4358, 2014 WL 2936018 at *9 (S.D.N.Y. June 27, 2014) (remanding because the ALJ's statement that the treating physician's opinion was "'inconsistent with claimant's activities of daily living, her testimony at the hearing, and the rest of the substantial evidence of record'" was too conclusory to set forth ALJ's reasoning for the weight assigned to the opinion).

ALJ Reich's statement that treating psychiatrist Dr. Lombardo's "assessment is overstated in light of the balance of the evidence" (see page 8 above) is just as conclusory as the statements rejected in the cases cited above and lacks the specificity required to fulfill the ALJ's obligations to set forth the reasons for the weight assigned to a treating physician's opinion. See 20 C.F.R. 404.1527(c)(2). ALJs are required to specify the ways in which a treating physician's opinion is inconsistent with the record and should specifically discuss the factors listed in 20 C.F.R. § 416.927(c) when considering the weight to assign to a treating physician's opinion. Lebron v. Colvin, 13 Civ. 9140, 2015 WL 1223868 at *19 (S.D.N.Y. Mar. 16, 2015) ("In making this assessment, the ALJ should, again, specifically discuss the factors listed in 20 C.F.R. § 416.927(c) with respect to [the treating physician's] specific findings and opinions."); see cases cited at pages 14-15 above. Instead, ALJ Reich made only conclusory statements without discussing the factors listed in 20 C.F.R. § 416.927(c).

Furthermore, the Second Circuit has held that when the treating physician's opinion is given less than controlling weight due to the existence of a differing opinion, the ALJ should explain why the differing opinions are entitled to more weight. Rugless v. Comm'r of Soc. Sec., 548 F. App'x at 700 ("To the extent that the rejection of [the treating physician's] opinion was based on the views of other treating physicians . . . the ALJ must describe how those views differed from [the treating physician's] . . . and why those differing views are of greater weight than [the treating physician's]."); accord, e.g., Duncan v. Astrue, 2011 WL 1748549 at *18 ("[T]he ALJ failed to

explain his reasons for giving [the treating physician's] opinion 'reduced weight' and failed to reconcile [the treating physician's] opinion with those of other physicians.").

ALJ Reich attempted to explain why Dr. Lombardo's opinion was entitled to "some weight" while Dr. Rothenberg, a consultative pediatrician, was entitled to "significant weight." The ALJ stated that Dr. Rothenberg's opinion was "consistent with [C.E.M.'s] longitudinal record of medical care, he is a specialist and he was present at the hearing." (See page 8 above.) In doing so, however, ALJ Reich contradicted her own assessment of the weight given to the treating physician, Dr. Lombardo, who is a specialist in the field of psychiatry. (See page 4 above.) ALJ Reich did not explain why the opinion of a specialist in the field of pediatrics (consultative physician Dr. Rothenberg) is deserving of more weight than the opinion of a specialist in the field of psychiatry (treating physician Dr. Lombardo). (See page 8 above.)

Adding to the confusion, the ALJ gave the opinion of consultative physician Dr. Gray "little weight" because he is a pediatrician rather than a specialist in the field of psychiatry. (See page 8 above.) This assessment is at odds with the ALJ's assessment that the opinion of consultative pediatrician Dr. Rothenberg should be given more weight than the opinion of C.E.M.'s treating psychiatrist Dr. Lombardo. (See page 8 above.)

Remand is required because ALJ Reich failed to properly apply the treating physician rule with respect to Dr. Lombardo's opinion. The Second Circuit "has consistently held that the failure to provide good reasons for not crediting the opinion of a claimant's treating physician is ground for a remand." Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 77 (2d Cir. 2010); see also, e.g., Halloran v. Barnhart, 362 F. 3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not

comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); Lebron v. Colvin, 2015 WL 1223868 at *17 ("[r]emand is appropriate to give the Commissioner the opportunity to assess the evidence, applying the correct legal standard.").

On remand, the ALJ should give sufficient explanation for the weight assigned to each treating physician. See, e.g., Lebron v. Colvin, 2015 WL 1223868 at *25; Miller v. Comm'r of Soc. Sec., 2015 WL 337488 at *23. These reasons must be more than conclusory statements and generic references to the record as a whole. Sickler v. Colvin, 2015 WL 1600320 at *12. The ALJ must discuss the factors listed in 20 C.F.R. § 416.927(c), identify specific parts of the record with which the treating physician's opinion is not consistent, and explain why that evidence is entitled to greater weight. See Rugless v. Comm'r of Soc. Sec., 548 F. App'x at 700; Lebron v. Colvin, 2015 WL 1223868 at *17, *19.

## CONCLUSION

For the reasons discussed above, the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is DENIED and Agins-McClaren's motion for judgment on the pleadings (Dkt. No. 19) is GRANTED to the extent of remanding the case to the Commissioner for further proceedings consistent with this order.

SO ORDERED.

Dated: New York, New York
November 24, 2015

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies **ECF**: All Counsel